No. 30,543.

FRANK YEOMAN, *Appellee,* v. NEVA J. MORRIS, *Appellant.*

(11 P. 2d 683.)

Opinion filed June 4, 1932.

*W. H. Russell, Donald A. Russell,* both of La Crosse, and *A. S. Marley,* of Kansas City, Mo., for the appellant.

*E. A. Schwartzkopf,* of La Crosse, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action to foreclose a mortgage on an undivided one-half interest in a quarter section of land in Rush county. Broadly speaking, the defense was that the mortgage had been paid by a conveyance of the title to the real property, and that plaintiff, in view of his relations to the parties and the transaction, was not in a position to claim ownership of the mortgage and the note thereby secured. The trial court found generally for plaintiff. Defendant has appealed.

The petition alleges that plaintiff resides at Kansas City, Mo., that defendant, formerly Neva J. Yeoman, was divorced and her maiden name restored, and is a nonresident of Kansas; that on March 15, 1918, one Rebecca T. Yeoman executed to one Frances C. Morris a promissory note for $1,500 due in five years, with interest at six per cent per annum, payable semiannually, and to secure the same gave a mortgage on the real property in question, which mortgage was duly recorded March 23, 1918; that thereafter and for value received the payee indorsed the note without recourse and delivered the same to plaintiff, who became and is now the holder thereof, and on March 22, 1923, executed an assignment

of the mortgage to plaintiff, which assignment was recorded May 3, 1929; that the time of the payment of the note was extended from March 15, 1923, to March 15, 1928; that on September 10, 1923, Rebecca T. Yeoman, by a warranty deed, conveyed her interest in the real property to the defendant; that the note secured by the mortgage is due, and that no interest has been paid thereon since April 3, 1923.

The answer alleged in substance that on March 15, 1918, and prior thereto, defendant was unmarried and lived with her mother, a widow, in Kansas City; that both of them had substantial means; that plaintiff was an attorney at law in Kansas City; that for herself and her mother she employed plaintiff as their legal adviser and attorney and paid him fees and commissions therefor; that the Rebecca T. Yeoman named in the petition is plaintiff's mother; that in March, 1918, defendant was seeking, for her mother, an investment of $1,500 and conferred with plaintiff about it; that plaintiff advised defendant to make the loan to his mother and that it be secured by the mortgage in question; that, acting upon plaintiff's advice, the loan was made; that after the mortgage was recorded defendant, for her mother, placed it in her safety-deposit box; that plaintiff and defendant were married in January, 1921, and lived together as husband and wife until in January, 1929, when they were separated, and that in May, 1930, defendant procured a divorce from plaintiff, because of his fault, in the circuit court of Jackson county, Missouri; that after her marriage to plaintiff, as well as before that time, plaintiff was employed by defendant and her mother as their attorney and legal adviser in connection with their investments and financial affairs; that the interest was paid on the $1,500 mortgage, except the one due in March, 1923, which interest payment and the note remained past due until about August, 1923, when defendant, acting for her mother, urged plaintiff to have it paid or fixed up; that the amount then due was about $1,600; that thereupon plaintiff, acting as attorney and adviser for defendant and her mother, advised that he had ascertained the reasonable value of the half interest in the land to be about the amount due on the mortgage and proposed to them that his mother, Rebecca T. Yeoman, convey the property to defendant by a deed of general warranty in payment of the amount due on the mortgage; that the proposition was accepted by defendant and her mother on the advice of plaintiff; that plaintiff proceeded to have his mother execute

to defendant a general warranty deed for her half interest in the property; that prior to that time the $1,500 note, together with other notes owned by defendant and her mother, had been indorsed in blank without recourse and left with plaintiff for such purposes as might be necessary in handling their investment; that upon the deed being executed defendant went to her lock box and got the mortgage; that under plaintiff's advice that such was the proper way to handle it defendant's mother made an assignment of the mortgage which plaintiff was to have released; that plaintiff afterwards reported to this defendant that he had the mortgage released of record. The answer alleged that the mortgage had been fully paid and denied that plaintiff had paid any consideration for it, or was the lawful owner and holder of it, and asked that it be canceled of record.

In his reply plaintiff admitted that he was married to defendant in January, 1921; that they were separated in 1929, and that defendant secured a divorce from him in May, 1930, and admitted that both before and during his marriage with defendant he had handled investments for her and her mother, and averred that their capital had been substantially increased thereby; alleged that in March, 1918, defendant conferred with him about loaning some money and he advised that his mother would like to obtain a loan of $1,500, and that the loan was made; alleged the reasonable value of the land at that time and ever since is not less than $75 per acre; that in March, 1923, when the note fell due, defendant's mother was not willing to renew it and it was agreed between plaintiff's mother and defendant's mother that the land should be conveyed to defendant and the mortgage should be assigned to plaintiff, and that this was done.

The parol evidence consisted for the most part of the testimony of plaintiff and defendant. As to some particulars the testimony conflicts. As to these the general finding by the trial court in favor of plaintiff determines those matters in his favor and are not open to review here. The matters concerning which there was no such conflicting evidence, as they appear by the pleadings and the evidence, may be stated briefly as follows: The relations between the parties were at first that of attorney and client. Defendant and her mother had money to invest and investments to be looked after, and employed plaintiff to advise them concerning such investments and to attend to such legal matters as were necessary in relation thereto,

for which services they paid him. This relation continued after plaintiff and defendant were married in 1921 and up until their separation in 1929. The $1,500 loan here in question was made under his advice in that capacity. There was nothing unusual about it, and interest was paid thereon until it became due according to its terms. Thereafter a question as to how it should be handled came up. As a result of that the mortgagor conveyed the land to defendant. At the time that conveyance was made the amount due on the note and mortgage was about $1,600, and that sum was named as consideration for the deed. The deed is in form a general warranty deed, not simply for the grantor's interest in the quarter section of land, but specifically for an undivided one-half interest therein. Among other things, it covenants that the real property is "free, clear discharged and unencumbered of and from all other former grants, titles, charges, estates, judgments, taxes, assessments and encumbrances of what nature or kind soever." Plaintiff drew that deed, under his advice it was executed, and he delivered it to the defendant, and the same was duly recorded soon thereafter. It is also clear that plaintiff paid nothing for the note and mortgage sued on in this action. When Frances C. Morris first indorsed it without recourse and handed it to him a substantial length of time before it was due she did so as she had done with many other notes or investment papers, that he might have it to handle for her as her attorney. He obtained possession of it in his capacity as attorney, not as owner nor for value. It is clear plaintiff's mother never gave plaintiff this note, for it never belonged to her. Until this action was brought defendant thought the mortgage had been released. Plaintiff had collected no interest thereon, nor had he attempted to do so. He did not record the assignment until after he and his wife were living apart from each other in 1929. When she obtained a divorce from him in May, 1930, the attorney for defendant discussed with plaintiff the titles to several pieces of property standing in defendant's name, one of which was situated in Missouri and was encumbered by a mortgage, and after mentioning the encumbrance on the Missouri property counsel asked plaintiff if there were encumbrances on any of the other property and he replied in the negative. It was not until after the divorce was obtained that this action was brought, then no demand had been made on defendant for the payment either of principal or interest, and summons on the action was had by publication.

Under these facts we are compelled to hold that the plaintiff cannot maintain this action: First, because he is not the owner of the note in question. He paid nothing for it. Before he could recover in this action it was essential that he show that he owned the debt secured by the mortgage. (42 C. J. 82.) This he failed to do. It is suggested that defendant did not pay value for the deed conveying the land to her, for the reason that if the deed were given in payment of the note, the note did not belong to defendant, but belonged to her mother. How defendant and her mother handled their property between themselves, is of no concern to plaintiff. Particularly is this true if plaintiff is not himself the owner of the mortgage sued upon. More than that, defendant's mother is now deceased and defendant would own the interest conveyed by the deed whether she was named as grantee therein or her mother had been so named. If this deed was not given in payment of the note and mortgage, then the note and mortgage have never been paid, and defendant normally would be the owner of the note and mortgage which plaintiff now claims and has made the basis of this action.

Second, because of his relations with defendant and her mother, and particularly the fact that he prepared, caused to be executed and delivered to defendant the deed conveying the property to her free and clear of all encumbrances. The assignment of the mortgage on which plaintiff relies bears a date nearly six months prior to the date of this deed. It is thoroughly inconsistent for the plaintiff, representing as he was the defendant and her mother in preparing this deed, causing it to be executed and delivered to defendant, to have written into it the warranty against encumbrances above quoted and later contend that at the same time he was the holder of the mortgage now sought to be foreclosed. To make the contention that he now makes is a violation of the trust imposed in him by defendant and her mother. (*Yeamans v. James*, 27 Kan. 195; *Holmes v. Culver*, 89 Kan. 698, 133 Pac. 164; *Neihart v. Buek*, 50 F. 2d 367; 6 C. J. 686, 690, and cases there cited.) The record estops him from claiming under this mortgage as against the defendant. (21 C. J. 1067, and cases there cited.) Appellee argues that estoppel cannot be relied upon because it was not pleaded. Though the word was not used the facts constituting the estoppel were pleaded. That is sufficient. Much is said in the briefs as to some of the evidence having been received in violation of our statute (R. S. 60-2805) relating to communications between husband and wife. The record

discloses that the trial court did not rule on the admissibility of such evidence; hence, there is no ruling of the trial court on this question which this court can review.

From what has been said the judgment of the trial court must be reversed with directions to render judgment for defendant and canceling of record the mortgage sued upon in this action. It is so ordered.