**JOHNSON v. TAYLOR et al.**
Civil Action No. 38174.

District Court of the United States for the District of Columbia.

Oct. 10, 1947.

Thomas S. Jackson, of Washington, D. C., for the motion.

Louis Rothschild, of Washington, D.C., opposed.

HOLTZOFF, Justice.

This is an action to set aside an alleged forged release of a deed of trust, and to recover damages of the notary public, Edward F. Harris, and the surety on his bond, The United States Fidelity and Guaranty Company, caused by his wrongfully acknowledging the signature to the false instrument. In its answer the surety company pleads the statute of limitations, the applicable period in actions on a sealed instrument being 12 years. D.C.Code 1940, Title 12, Section 201. The defendant surety company moves for summary judgment.

It is well settled in this jurisdiction that in an action based on fraud, the statute of limitations begins to run, not when the cause of action accrued, but from the discovery of the facts out of which the claim arose, or from the time when the facts should have reasonably been found out in the exercise of due diligence. This doctrine is manifestly conducive to advancing the ends of justice. Statutes of limitations have frequently been denominated statutes of repose. Their purpose is to bar attempts to enforce stale claims, since lapse of time may prejudice the defendant in ascertaining facts or procuring and presenting evidence in support of his defense. On the other hand, they are not intended to assist one who has perpetrated a fraud that does not come to the attention of the injured party until a later date. Under these circumstances it is immaterial whether the action is legal or equitable in its nature.

This principle was enunciated many years ago in Bailey v. Glover, 21 Wall. 342, 347, 348, 349, 22 L.Ed. 636, as follows:

"In suits in equity where relief is sought on the ground of fraud, the authorities are without conflict in support of the doctrine that where the ignorance of the fraud has been produced by affirmative acts of the guilty party in concealing the facts from the other, the statute will not bar relief provided suit is brought within proper time after the discovery of the fraud.

"We also think that in suits in equity the decided weight of authority is in favor of the proposition that where the party injured by the fraud remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no

special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

"* * * the weight of judicial authority, both in this country and in England, is in favor of the application of the rule to suits at law as well as in equity. And we are also of opinion that this is founded in a sound and philosophical view of the principles of the statute of limitation. They were enacted to prevent frauds; to prevent parties from asserting rights after the lapse of time had destroyed or impaired the evidence which would show that such rights never existed, or had been satisfied, transferred, or extinguished, if they ever did exist. To hold that by concealing a fraud, or by committing a fraud in a manner that it concealed itself until such time as the party committing the fraud could plead the statute of limitations to protect it, is to make the law which was designed to prevent fraud the means by which it is made successful and secure."

In the District of Columbia this rule was adopted in Moses v. Taylor, 17 D.C. 255, 6 Mackey 255, 281. Subsequently these principles were exhaustively considered and approved in Lewis v. Denison, 2 App.D.C. 387, 391, where Mr. Justice Shepard wrote as follows:

"That the bar of the statute of limitations will not commence to run in equity until the fraud has been discovered, or until such time as by the use of ordinary care it might reasonably have been discovered, is now universally conceded. There has, however, been great diversity of opinion with respect to the operation of this rule in actions at law. The question was thoroughly considered by Story, J., in the Circuit Court, at an early day, and after an exhaustive review of the authorities, and discussion of the principle, he considered that the rule should be made to apply at law as well as in equity. See Sherwood v. Sutton, 5 Mason 143. The weight of authority at the present time supports the conclusion."

The learned Justice then quoted from Bailey v. Glover, supra, and indicated that these principles constituted the law in this jurisdiction.

These views were reiterated in P. H. Sheehy Co. v. Eastern Importing & Mfg. Co., 44 App.D.C. 107, L.R.A.1916F, 810, and recently again in Young v. Howard, 73 App.D.C. 340, 120 F.2d 712, in which Mr. Justice Vinson wrote the opinion.

It is urged, however, that as to the surety, the statute of limitations begins to run when the cause of action accrued, since it is not charged that the surety in any way participated in the fraud or was even cognizant of the notary's wrongful act, until this action was brought. The liability of the surety is, however, to answer for his principal's fraud, or other wrongful or negligent act. The liability of the principal and the surety is coextensive. It seems reasonable, therefore, that if ignorance of the fraud committed by the principal tolls the statute of limitations as against him until the fraud is, or should have been, discovered, the same result should follow in respect to the surety. Otherwise, it is entirely conceivable that the cause of action against the surety might become barred even before the statute of limitations commences to run against the principal. Such a result would frustrate and defeat the very purposes for which a surety bond is given. It must be borne in mind that the writing of surety bonds has become a business. The surety receives compensation for his services. The position of the modern surety company is entirely unlike that of the individual surety of old, who was generally accommodating a friend and, therefore, was entitled to confine his liability within narrow limits.

The weight of authority sustains this conclusion.

In Eising v. Andrews, 66 Conn. 58, 64, 65, 33 A. 585, 587, 50 Am.St.Rep. 75, involving an action on an administrator's bond, it was urged in behalf of the surety that fraudulent concealment by the principal did not prevent the accruing of a cause of action against the former. The court in overruling this contention made the following observations:

"It seems to us that there is a fallacy— or, rather, it is a fatal error—in this argument. It conflicts with the most essential feature of the law relating to surety and

principal. The plaintiff seeks to recover damages on account of the defalcation of Rowan. The argument of the defendant assumes that a cause of action for such defalcation could exist against him before any cause of action therefor against Rowan had accrued. But the law relating to principal and surety forbids this. The rule is that a cause of action cannot exist against a surety, as such, unless a cause of action exists against his principal. Ordinarily, the liability of such a surety is measured precisely by the liability of the principal."

In Lieberman v. First Nat. Bank, 2 Pennewill (Del.) 416, 425, 426, 45 A. 901, 48 L.R.A. 514, 82 Am.St.Rep. 414, the court in reaching the same result in respect to an action on the fidelity bond of a bank teller, made the following pertinent comments:

"It therefore seems to be established, that in cases on official bonds, concealed fraud on the part of the principal, will deprive both principal and surety of the benefit of the statute of limitations; that the statute does not begin to run until the fraud is discovered.

"The reason seems to be, that in such bonds the sureties guarantee the good conduct and faithfulness of the principal in the discharge of the duties of his office, and that in equity and good conscience, they should not be exempt from liability for his misconduct and peculations, when by fraudulent concealment he has prevented discovery until the time limited by the statute to bring action has expired."

Numerous cases approve and apply the foregoing principles. Thus, in Bradford v. McCormick, 71 Iowa 129, 131, 32 N.W. 93, it was held that even though the surety is not guilty of any fraud, he is bound by the fraudulent conduct of the principal as concerns the date on which the period of limitations begins to run. The following cases hold to the same effect: Heap v. Heap, 258 Mich. 250, 263, 242 N.W. 252; State v. Gant, 201 N.Car. 211, 228, 159 S.E. 427.

In conclusion, the period of limitations in an action against the surety is to be measured from the time the statute began to run against the principal. It did not commence to run against the principal until his fraud was discovered, or should reasonably have been discovered, by the plaintiff. The ascertainment of this date involves the determination of a question of fact. Consequently, there exists in this case a material issue of fact and for this reason the motion for summary judgment is denied.